## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOHN SWIATEK, individually and on behalf
of all others similarly situated,

        Plaintiff,

     v.

CVS PHARMACY, INC.

        Defendant.

Case No. 23-CV-01523

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff John Swiatek brings a putative class action against Defendant CVS Pharmacy, Inc. ("CVS"), alleging that Defendant's "Dry Mouth Discs" contain false and misleading labeling, *see* [1]. Plaintiff asserts the following claims: (1) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (2) breach of express warranty; (3) fraud; and (4) unjust enrichment.[1] *See* [1], [22] at 5. Defendant moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). [18]. As set forth below, this Court grants Defendant's motion.

## I. The Complaint's Allegations

Plaintiff alleges that, between 2021 and 2023, he purchased CVS Health brand "Dry Mouth Discs" (the "Product") one or more times from a CVS store in Cary, Illinois. [1] ¶ 46. The Product's packaging includes statements that it is a "dietary

---

[1] Plaintiff originally also asserted claims under other states' consumer fraud statutes, as well as claims for breach of the implied warranty of merchantability/fitness for a particular purpose and negligent misrepresentation, claims seeking relief under Magnuson-Moss, and claims seeking injunctive relief. *See* [1]. But he has since withdrawn these claims. [22] at 5 n.1.

supplement," which provides "lasting moisture," "soothes dry tissue," and "promotes a healthy mouth." *Id.* ¶ 1. Using an asterisk, the label ties the phrases "soothes dry tissues" and "promotes a healthy mouth" to text indicating that the Product has not been "evaluated by the Food and Drug administration," and that the Product "is not intended to diagnose, treat, cure or prevent any disease." [19] at 8. According to Plaintiff, the text on the packaging, accompanied by an image of a water droplet, misled him to believe "the Product would be beneficial to oral health by alleviating the symptoms of dry mouth by simulating saliva production" and would "mitigate salivary gland disorders." [1] ¶ 47. In fact, Plaintiff alleges, the Product is highly acidic, having a pH of 5.3, and thus "detrimental to oral health" because it contributes to "demineralization; dental erosion; sensitivities; and caries." *Id.* ¶¶ 9, 12. Plaintiff alleges that use of the Product erodes the tooth structure, citing one study suggesting that use of the Product caused "1% tooth loss." *Id.* ¶ 10. Plaintiff also alleges that the dangers of oral moisturizers like the Product have been "known to dental professionals through publications in dental journals, which subjected the Product to laboratory analysis." *Id.* ¶ 11. Plaintiff footnotes this allegation with a cite to two articles. *See* [1] at 3 n.3.

Plaintiff alleges that, had he known of the alleged false and misleading statements and omissions on the packaging, he would either not have purchased the Product or would at least have paid less for the Product than the "premium price, approximately not less than $9.29 per 40 lozenges, excluding tax and sales." *Id.* ¶¶ 49, 51.

2

Plaintiff claims: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA); (2) breach of express warranty; (3) fraud; and (4) unjust enrichment, *see* [1]. Defendant moves to dismiss all claims for failure to state a claim under Rule 12(b)(6), *see* [18].

## II. Applicable Legal Standards

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "a short and plain statement" with "sufficient factual matter" to "state a claim to relief that is plausible on its face." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 663, 677–78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when it "allows the court to draw the reasonable inference" that the "defendant is liable for the conduct alleged." *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court accepts all well-pled facts as true and draws all reasonable inferences in favor of the plaintiff. *Id.*; *Twombly*, 550 U.S. at 555. The Court need not credit allegations resting solely upon "labels and conclusions"; nor does it accept legal conclusions as true. *Twombly*, 550 U.S. at 555. Additionally, when ruling, the Court may consider documents attached to a defendant's motion to dismiss If they are referenced in the complaint and are central to the case. *Hecker v. Deer & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009).

### B. Rule 9(b) Standard

Although most claims are covered by Rule 8, claims sounding in fraud must

comply with a heightened pleading standard. *See, e.g., Thomson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004) (Federal Rule of Civil Procedure 9(b) requires pleadings to contain a level of specificity that is not typically required by federal judges when evaluating the sufficiency of a complaint). When alleging fraud "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The plaintiff must "allege the who, what, where, when of the alleged fraud," with the goal of ensuring the plaintiff completed an "investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Mut. Life Ins. Co.,* 172 F.2d 467, 469 (7th Cir. 1999). This heightened pleading standard applies to Plaintiff's ICFA and fraud claims.

## III.    Analysis

Defendant moves to dismiss all claims, and the Court considers below the parties' arguments with respect to the claims Plaintiff has not withdrawn.

### A.    Plaintiff's ICFA Claim

Plaintiff first alleges that Defendant wrongfully misled consumers to believe the Product was beneficial to oral health and failed to inform purchasers of the likelihood of demineralization, dental erosion, greater sensitivity, and higher incidences of dental caries, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. *See* [1] ¶¶ 66, 67. To state an ICFA claim, under 815 Ill. Comp. Stat. 505/2, a plaintiff must show: (1) the defendant acted deceptively; (2) the defendant intended for the plaintiff to rely upon the deception; (3) the deception was

4

involved in conduct of trade or commerce; and (4) resulted in actual damage to the plaintiff that was; (5) proximately caused by the deceptive act. *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009) (citing *Zekman v. Direct Am. Marketers,* 695 N.E.2d 853, 860 (Ill. 1998)). Moreover, Rule 9(b)'s heightened pleading standard, requiring particularity and specificity, applies to ICFA claims sounding in fraud. *See Counts v. Arkk Food Co.,* No. 23 CV 0236, 2023 WL 7281851, at *2 (N.D. Ill. Nov. 3, 2023) ("when the gravamen of a plaintiff's complaint sounds in fraud, all ICFA claims are evaluated under the heightened pleading standard of Rule 9(b)."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 2010 WL 624709, at *6 (N.D. Ill. Feb. 18, 2010) ("ICFA claims sounding in fraud or deception are still required to meet the heightened pleading requirements of Rule 9(b)"); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014) ("Since Camasta's claim was of fraud under the ICFA, the sufficiency of his complaint is analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b)").

Defendant moves to dismiss Plaintiff's ICFA claim, arguing that the Product's packaging was not deceptive, and that Plaintiff fails to plead actual damages. [19] at 12–13, 14.

### 1. The Allegedly False/Deceptive Nature of the Packaging

Defendant first argues that the Product packaging is not deceptive, and that Plaintiff's allegations remain predicated upon an unreasonable interpretation of the label. [19] at 13. A statement is deceptive under the ICFA, "if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC,* 246 F.3d

934, 938 (7th Cir. 2001). Statements that cannot be reasonably interpreted as false are not deceptive. *Id.* at 939. Courts gauge deception using a "reasonable consumer" standard, asking whether "the relevant labels are likely to deceive reasonable consumers." *Beardsall v. CVS Pharmacy*, Inc., 953 F.3d 969, 972 (7th Cir. 2020). The Court considers "all the information available to consumers and the context in which that information is provided and used." *Bell v. Publix Super Markets, Inc.,* 982 F.3d 468, 477 (7th Cir. 2020). Where a plaintiff bases his claim upon "unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell,* 982 F.3d at 477.

Plaintiff broadly alleges that the Product's name, "Dry Mouth Discs," and statements on the label indicating it would "provide lasting moisture," "soothe dry tissues," and "promote a healthy mouth" mislead consumers to believe it is beneficial to oral health, stimulates saliva production, and mitigates salivary gland disorders, when, in fact, the Product actually "contributes to demineralization, dental erosion, sensitivity, and caries." [1] ¶¶ 1, 12, 13, 46, 48, 66; [22] at 6–7.

In *Tlaib v. Chattem,* Inc., No. 23 CV 376, 2023 WL 5830795 (N.D. Ill. Sept. 8, 2023), the plaintiff, represented by the same attorneys who represent Plaintiff in this case, asserted almost identical claims, arguing that statements on an oral health product's labeling that it "soothes dry mouth," "moisturizes mouth tissue," and "freshens breath," were deceptive because they suggested the product would improve oral health and treat disease, when its pH level actually contributed to dental issues. *Id.*, 2023 WL 5830795, at *2–3. The court determined that, because the plaintiff

6

failed to allege that the product did not, in fact, soothe dry mouth, moisturize mouth tissue, or freshen breath, the plaintiff failed to state an ICFA claim that the statements on the product's packaging were misleading. *Id.,* 2023 WL 5830795, at *3–4. The court also ruled that the plaintiff unreasonably interpreted the label, as "representations that a product addressed symptoms differ from representations that a product addressed an underlying disease." *Id.,* 2023 WL 5830795, at *3. The same is true here. Indeed, as Defendant notes, Plaintiff has not alleged that he ever used the Product; nor does he allege that the Product failed to "provide lasting moisture," "soothe dry tissues," or "promote a healthy mouth." Although he claims the Product fails to stimulate saliva, mitigate salivary gland disorders, or treat disease, those statements do not appear anywhere on the Product.

To the extent Plaintiff alleges that statements that do appear on the label should be read to mean that the Product stimulates saliva, mitigates salivary gland disorders, and treats disease, Defendant argues, his interpretation remains unreasonable. The Court agrees. A reasonable consumer would not read the statements "soothes dry tissue" and "promotes a healthy mouth" to mean that the Product mitigates salivary gland disorders; the leap between those two premises remains wide, and wider still considering the clear disclaimer that the Product is not intended to treat, cure, or prevent any disease, and has not been evaluated by the FDA. Although disclaimers are not dispositive in determining if a statement on a label is misleading, *Pearson v. Target Corporation*, No. 11 CV 7972, 2012 WL 7761986, at *2 (N.D. Ill. Nov. 9, 2012) (denying motion to dismiss ICFA claim despite

product containing a disclaimer that it does not cure disease), the interpretation that the Product mitigates salivary gland disorders is unreasonable given the context of the packaging and the absence of any statement that the Product would treat disease.

Additionally, Plaintiff's allegation that the label statement concerning general oral health is false or misleading remains untethered to the packaging. In *Padilla v. Costco Wholesale Corp.,* No. 11 C 7686, 2012 WL 2397012, at *1 (N.D. Ill. June 21, 2012), the plaintiff alleged that the packaging and labeling of Kirkland Signature™ Extra Strength Glucosamine HCL with MSM and Kirkland Signature™ Extra Strength Glucosamine/Chondroitin claimed that the products were "clinically proven effective," when, in fact, "numerous clinical cause and effect studies have found no causative link between MSM supplementation and joint renewal or rejuvenation or the relief of the two major symptoms of arthritis." The plaintiff also alleged that the products were "not an effective remedy for the symptoms of arthritis and other joint-related ailments." *Id.* The court dismissed the plaintiff's ICFA claim, finding that the plaintiff had failed to allege that the products' labels said anything about "joint renewal or rejuvenation," and his fraud allegations thus failed to satisfy the particularity required by Rule 9(b). *Id.*, 2012 WL 2397012, at *4. The same is true here.

Plaintiff alleges that the Product's representation that it is "beneficial to oral health and the alleviation of dry mouth is misleading." [1] ¶ 13. And he alleges that this is so because the Product "fails to inform purchasers of the likelihood of demineralization, dental erosion, greater sensitivity, and higher incidences of dental

caries." *Id.* ¶ 14. But the exact statements "beneficial to oral health" and "alleviat[es] dry mouth" do not appear anywhere on the Product. Likewise, as to Plaintiff's claims that the label statement "promotes a healthy mouth" is false or misleading (because the "dangers of oral moisturizers" were "known to dental professionals through publications in dental journals"), [1] ¶ 11, Plaintiff fails to allege facts to support the allegation; he does not describe the publications' findings or conclusions or say anything about what specific findings prove the Product's statement false. The omission is particularly damning after a simple review of the publications[2] cited in the complaint (and attached to Defendant's reply brief), which confirms that the publications do not involve the Defendant's Product or support Plaintiff's claims. *See* [25-1] at 3 (showing the list of oral moisturizer products studied, a list that does not include the Product; and also finding that "oral moisturizers can provide significant comfort to patients suffering from dry mouth and prevent dental erosion and caries"; that "the erosive potential relies not only on the pH of the product, but also the complex interplay of other ingredients may have a neutralizing effect; hence, tooth substance loss will not always occur"; and that "it would seem reasonable for practitioners to take care in recommending oral moisturizing agents with a safe formulation for their patients."); [25-2] at 4, 5 (confirming that the list of studied products does not include the Product and finding that a "large variation" exists in "the composition and pH values of commonly used oral moisturizers, and there is a

_____

[2] Although courts "are typically constrained by the complaint in this posture of litigation," courts may "consider other documents attached to a motion to dismiss when they are referenced in the complaint and central to the plaintiff's claim." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021) (citing *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)).

strong correlation between pH values and erosive potential of commonly used oral moisturizers"; that "it would thus seem reasonable to recommend oral moisturizing agents with pH values at or above the critical pH values of enamel and root dentin for patients suffering from reduced salivary flow rates"; and that "some of the ingredients in the moisturizing agents might be of benefit," particularly in reducing caries). The publications, in short, undermine the plausibility of Plaintiff's allegation concerning the false or misleading nature of the statement "promotes a healthy mouth."

Plaintiff also alleges that he "expected the Product would be beneficial to oral health by alleviating the symptoms of dry mouth by stimulating saliva production and mitigate salivary gland disorders." *Id.* ¶ 47. And he alleges that he was not aware that the Product "is detrimental to oral health by contributing to demineralization, dental erosion, sensitivity, and caries" and "was not authorized to mitigate salivary gland disorders." *Id.* ¶ 48. Yet the Product says nothing about stimulating saliva production or mitigating salivary gland disorders. And his allegations about the detrimental effects of the Product's pH level on general oral health remain conclusory. As a result, his claim fails the standards set forth above.

Nor has Plaintiff alleged anything concerning Defendant's intent. He alleges, in a conclusory fashion in connection with his claim for violation of other states' consumer fraud acts, that "Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages." [1] ¶ 70. But he dismissed this claim in response to Defendant's motion.

And, as noted, he has included no facts to support any alleged intent. For these reasons, Plaintiff's ICFA claim falls short as to the first two elements of an ICFA claim. As discussed below, his claim also fails on the fourth element: damages.

### 2. Actual Damages

A plaintiff must establish "actual damages" for an ICFA claim. *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 322 (7th Cir. 2021); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). *See also Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1204 (Ill. 2019) ("To bring a private right of action under the ICFA, actual damage to the plaintiff must be alleged."). To plead actual damages, a plaintiff must allege "actual pecuniary loss." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Defendant argues that Plaintiff fails to allege such actual damages.

Plaintiff concedes that he never used the Product. But he nonetheless argues that he has sufficiently pled damages by claiming that he would not have purchased the Product, or would have paid less for the Product, had he known of the "true facts." [1] at 51; [22] at 9. To be sure, some courts have held that, to satisfy the ICFA's damages element, a plaintiff must allege that the product did not work *for him personally*. *See Padilla*, 2012 WL 2397012, at *1, 3, 4 (granting motion to dismiss based upon the plaintiff's failure to claim the product did not work for him); *Greifenstein v. Estee Lauder Corp.,* No. 12 CV 09235, 2013 WL 3874073, at *6 (N.D. Ill. July 26, 2013) (holding that a plaintiff suing for violation of the ICFA involving an anti-aging serum satisfied the actual damages pleading requirement because she,

11

alleged "that the serum simply did not work for her at all"); *Dervin v. NBTY, Inc.*, 607 F. Supp. 3d 837, 837 (N.D. Ill. 2022) (rejecting the plaintiff's ICFA claim because she "has not alleged she ever used the Biotin Products, and therefore any assertion that the products would not have worked *for her* is mere speculation.").

But cases also suggest that an ICFA plaintiff *can* adequately plead actual damages based upon financial losses alone, without having used the product. For example, in *Curtis v. 7-Eleven, Inc.*, No. 21 CV 6079, 2022 WL 4182384, at *1–*2 (N.D. Ill. Sept. 13, 2022), the plaintiff sued 7-Eleven for violating the ICFA by marking its products (cups, plates, bags) as recyclable when they were not, in fact, made from easily recycled materials; the plaintiff alleged for damages that she would not have bought the product if she had known of the alleged misrepresentations, and the court found that the allegation was sufficient to state a claim for actual damages.

Similarly, in *Stemm v. Tootsie Roll Industries, Inc.*, 374 F. Supp. 3d 734, 737 (N.D. Ill. 2019), the plaintiff alleged that the defendant's candy packaging misled her to believe the product contained more candy than it actually did, and the court allowed the claim to proceed, finding that "actual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Id.* at 742–43.

In *Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013), a case involving an ICFA claim based upon a Diaper Genie product, the court noted that "Illinois courts have generally allowed damages claims based on diminished value of a product regardless of whether it has yet malfunctioned, provided the product

12

contains a manifested defect or current condition affecting value." (citing *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 10 (Ill. App. Ct. 2001); *Dewan v. Ford Motor Co.*, 842 N.E.2d 756, 760–63 (Ill. App. Ct. 2005) (citing cases for the proposition that "[t]he diminished value of a product due to defects associated with the product is a compensable injury in [a] consumer fraud ... action," and holding that the plaintiff sufficiently pleaded actual damages where the "complaint alleged that the defect caused the car to be worth less than the plaintiff paid for it and, had the plaintiff known of the defective sensors, he would not have purchased the vehicle or would have paid substantially less for it").

But whether or not a plaintiff *can* allege actual damages without having used the product, Plaintiff here has not done so. Without explanation or supporting facts, Plaintiff alleges only that he "would not have purchased the Product or paid as much if the true facts had been known, suffering damages." [1] ¶ 67. "Even under Rule 8(a), 'naked assertions devoid of further factual enhancement' are insufficient to support a claim." *Camasta*, 761 F.3d at 740 (quoting *Iqbal*, 556 U.S. at 678). Plaintiff's allegations falls far short under Rule 9. Without any facts to "support his conclusory assertions of actual damage," Plaintiff "has not sufficiently pleaded that he paid more than the actual value of the merchandise he received." *Id.* *See also Sabo v. Wellpet, LLC*, 250 F. Supp. 3d 332, 337 (N.D. Ill. 2017) (plaintiff's allegation that he "paid more for the products than they were actually worth," "without any factual foundation to moor his subjective estimation of the products' worth," remained "too speculative to support an inference of actual damages").

13

Because Plaintiff has failed to plausibly allege that the statements on the label are false or deceptive, failed to allege any facts to suggest that Defendant intended to deceive, and failed to allege actual damages in a manner that tethers his subjective estimation to some factual foundation, he has failed to state a claim for violation of the ICFA. The Court thus dismisses his ICFA claim.

## B.    Plaintiff's Breach of Express Warranty Claim

Plaintiff also alleges that the Product expressly warranted that it would "improve oral health by alleviating the symptoms of dry mouth and mitigate salivary gland disorders" and breached that express warranty because it increases "the likelihood of demineralization, dental erosion, greater sensitivity, and higher incidences of dental caries." [1] ¶ 71. In Illinois, any "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 Ill. Comp. Stat. 5/2-313(1)(a).

To state a breach of express warranty claim, a plaintiff must allege that a seller: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020). As a general rule, "a plaintiff must state the terms of the warranty alleged to be breached or attach it to the complaint." *Baldwin v. Star Scis., Inc.,* 78 F. Supp. 3d 724, 739 (N.D. Ill. 2017) (internal quotation marks and citation omitted).

As explained above, Plaintiff's allegation that the Product increases "the

likelihood of demineralization, dental erosion, greater sensitivity, and higher incidences of dental caries," [1] ¶ 71, remains conclusory and not supported by the publications he references. But before even getting to that point, Plaintiff's claim also fails because he failed to provide pre-suit notice of the alleged breach. A buyer seeking to sue for breach of an express warranty must first notify the seller of its breach. *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015). Plaintiff failed to do so here.

A plaintiff's failure to comply with the notice requirement may be excused if the plaintiff alleges that he suffered a physical injury or that the defendant had actual knowledge of the product's defect. *Id.* at 760. Such failure is not excused if the plaintiff suffered only economic damages. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590–91 (Ill. 1996) (holding that dismissal was appropriate because plaintiffs suffered only economic damages and did not provide pre-litigation notice). Here, Plaintiff has not alleged a physical injury; he alleges only economic damages. He does allege, however, that Defendant "received notice and should have been aware of these issues due to complaints by consumers and third parties, such as Greg Grillo, D.D.S., and including regulators and competitors, to its main offices and through online forums." [1] ¶ 81. He also argues that filing this lawsuit satisfies the pre-suit notice requirement. Not so. The notice requirement is supposed to encourage pre-suit settlement negotiations, *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007); the requirement would be meaningless "if a party could satisfy the notice requirement by filing suit. . . ." *Rudy v. Fam. Dollar Stores, Inc.*,

15

583 F. Supp. 3d 1149, 1163 (N.D. Ill. 2022).

*In Re Bridgestone/Firestone, Inc. Tires Products*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001), does not compel a different result. Although the court in that case found that the filing of suit *could* satisfy the notice requirement, *id*. at 1110, the case, which remains non-binding, admittedly ran afoul of precedent from the Illinois Supreme Court, which held that the notice requirement could not be met by filing suit, except in circumstances not present here. *Id*. (observing that the Illinois Supreme Court held in *Connick*, 675 N.E.2d at 590, that "under Illinois law only a consumer buyer who suffered a personal injury may satisfy [the notice requirements set forth in the Uniform Commercial Code] by filing suit"). Nor does Plaintiff's allegation that Defendant received "complaints by consumers and third parties" absolve Plaintiff of his duty to notify Defendant. At best, this allegation suggests "generalized knowledge" of the supposed defect, which remains insufficient. *See Connick*, 675 N.E.2d at 590.

Because Plaintiff failed to notify Defendant of the alleged breach before filing this lawsuit, and because his claimed justifications to excuse that failure lack merit as alleged, the Court dismisses Plaintiff's claim for breach of express warranty.

The Court's decision on this claim should come as no surprise to Plaintiff's counsel, as the same result has obtained in several other cases they filed here. Indeed, in dismissing these claims, several courts have even invoked Rule 11. *See Guzman v. Walmart Inc.,* No. 22 CV 3465, 2023 WL 4535903, at *2–3 (N.D. Ill. May 15, 2023); *Lesorgen v. Mondelēz Glob., LLC,* No. 3:22 CV 50375, 2023 WL 3568686,

at *5 (N.D. Ill. May 19, 2023); *Bruno v. Am. Textile Co., Inc.*, No. 22 CV 2937, 2023 WL 6976826, at *6–*7 (N.D. Ill. Oct. 23, 2023). In *Bruno*, Judge Hunt specifically noted that "Plaintiff's counsel in this case, Spencer Sheehan, has filed many similar suits bringing virtually identical claims, and has almost universally lost at the motion to dismiss phase for the exact reasons discussed here." 2023 WL 6976826, at *6. In fact, Judge Hunt questioned whether counsel's persistent assertion of claims that have been "consistently and soundly rejected" "can reasonably be considered as warranted under existing law by an attorney acting in good faith." *Id.,* 2023 WL 6976826, at *7. She reminded counsel of his ethical obligations under Rule 11 and urged him "to proceed appropriately in this case and with future filings in this district." *Id.* Despite this fair warning, Plaintiff failed to withdraw his breach of express warranty claim and allowed his frivolous argument to stand. The Court shares Judge Hunt's concerns.

Indeed, Judge Hunt is not the only Judge in this District to question counsel's strategy. *See Guzman v. Walmart Inc.,* No. 22-CV-3465, 2023 WL 4535903, at *3 (N.D. Ill. May 15, 2023) ("Plaintiff's counsel has developed a fair bit of notoriety for filing cases about consumer labeling. Many of the complaints have suffered the judicial equivalent of a crash landing, or perhaps an explosion on the launch pad. They haven't survived for long. Lawyers have an obligation to file cases in good faith. *See* Fed. R. Civ. P. 11. Filing cases imposes significant costs on opposing parties, and on the judiciary itself. Courts have an institutional interest in protecting themselves from frivolous cases, because it is not fair to the countless other litigants in countless

other cases that deserve a court's attention. When a party files a frivolous case, and consumes the Court's attention, everyone else foots the bill. For now. This Court is increasingly curious about which side of the line Plaintiff's counsel is on."); *Lesorgen v. Mondelez Glob., LLC*, 674 F. Supp. 3d 459 (N.D. Ill. 2023) ("The Court is aware of Judge Seeger's recent warning to Ms. Lesorgen's counsel. The Court echoes Judge Seeger's sentiment and reminds Ms. Lesorgen's counsel of his obligations under Federal Rule of Civil Procedure 11."). Counsel should take note that if he continues to press such claims and arguments, he will face sanctions. Certainly, counsel should consider this order to be the last warning he will ever receive from this Court on the point.

### C.   Plaintiff's Fraud Claim

In his fraud claim, Plaintiff alleges that Defendant "misrepresented and/or omitted the attributes and qualities of the Product, that it would improve oral health and did not expect it would be formulated to negatively affect oral health." [1] ¶¶ 91, 92. To state a claim for common law fraud involving a misrepresentation, a plaintiff must allege: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick*, 675 N.E.2d at 496. Rule 9(b)'s heightened pleading standard, requiring particularity and specificity, applies to common law fraud claims. *Id.*

Plaintiff fails to allege the who, what, when, where, and how to support his

18

fraud claim. Indeed, Plaintiff fails to plausibly allege that the Product contained a false statement of material fact; rather, his claim stems from his interpretation of the Product's label, which he maintains was misleading and deceptive (an interpretation, as discussed above, that remains unreasonable). Nor does the complaint adequately allege Defendant's knowledge. "Scienter, knowledge by the defendant that a statement he has made is false, is an essential element of common-law fraud." *Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505, at *8 (N.D. Ill. Mar. 1, 2022). Plaintiff's conclusory allegation that "Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would improve oral health and did not expect it would be formulated to negatively affect oral health," [1] ¶ 91, remains insufficient.

Again, the ruling should come as no surprise to counsel. *See Rudy v. Fam. Dollar Stores, Inc.,* 583 F. Supp. 3d 1149, 1165 (N.D. Ill. 2022) (plaintiff's scienter allegations (crafted by the same attorney, Spencer Sheehan), alleging that defendant's fraudulent intent was "evinced by its knowledge that the Product was not consistent with its representations," was "conclusory," and therefore, failed to satisfy the Rule 9(b) standard); *Chiappetta*, 2022 WL 602505, at *8 (where the court told Attorney Spencer Sheehan that, "like the plaintiff in *Rudy*, Chiappetta alleges that Kellogg had fraudulent intent because it misrepresented the characteristics of the Product on the Product's packaging. As in *Rudy*, these allegations regarding scienter are conclusory and, therefore, fall short of what Rule 9(b) requires."). The Court dismisses Plaintiff's fraud claim.

### D.    Unjust Enrichment

Finally, Plaintiff alleges that Defendant was unjustly enriched by the misrepresentation on the product to the detriment of the Plaintiff.  [1] ¶ 93.  To state a claim for unjust enrichment, a "plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.,* 656 F.3d 511, 516 (7th Cir. 2011).  Plaintiff's single allegation in support of this claim constitutes the quintessential "formulaic recitation of the elements," which remains insufficient.  *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("mere conclusory labels or formulaic recitations of statutory elements of a claim will not suffice").

Additionally, if an unjust enrichment claim rests upon "the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).  Here, Plaintiff's unjust enrichment claim is tied to his ICFA claim and fraud claims; because they fail, this claim too fails.

## IV.    Conclusion

For the reasons explained above, this Court grants Defendant's motion to dismiss [18] and dismisses Plaintiff's ICFA, breach of express warranty, fraud, and unjust enrichment claims.  The Court also grants Plaintiff's request, embedded in his response brief, to voluntarily dismiss his multi-state consumer fraud claims, his

claims for breach of the implied warranties, his negligent misrepresentation claim, his claim seeking relief under Magnuson-Moss, and any claim for injunctive relief.

Ordinarily, the Court would grant Plaintiff leave to replead his ICFA, and fraud claims, along with any related unjust enrichment claim. *See, e.g., Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."). But counsel in this case has been told numerous times that allegations such as those he asserts here fall short under Rules 8 and 9. Based upon counsel's history and experience in this District, the Court finds that leave to amend remains unwarranted; if counsel could have crafted better allegations to support his ICFA and fraud claims, having lost so many times before with such allegations in similar cases, he would have done so. The Court dismisses all claims with prejudice.

Dated: March 28, 2024

Entered:

John Robert Blakey
United States District Judge